**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3046-15T3

FREDDIE MITCHELL,

    Plaintiff-Respondent,

v.

BOROUGH OF ROSELAND
POLICE DEPARTMENT,

    Defendant-Appellant.

_____

        Argued February 14, 2017 — Decided  March 15, 2017

        Before Judges Yannotti and Fasciale.

        On appeal from Superior Court of New Jersey,
        Law Division, Essex County, Docket No. L-8140-
        14.

        R. Scott Fahrney argued the cause for
        appellant (Kaufman, Semeraro & Leibman,
        L.L.P., attorneys; Mr. Fahrney and Mark J.
        Semeraro, on the brief).

        Respondent has not filed a brief.

PER CURIAM

    Defendant Borough of Roseland Police Department (RPD) appeals

from an order entered by the Law Division on February 19, 2016,

which denied its motion for reconsideration of an order dated

December 17, 2015, setting aside a reprimand and an eight-day suspension that the RPD imposed upon plaintiff Freddie Mitchell. We reverse.

We briefly summarize the relevant facts and procedural history. Since approximately 2000, Mitchell has been an officer in the RPD. On January 26, 2012, the RPD charged Mitchell with insubordination, specifically, failing and refusing to comply with an order of Captain Kevin M. Kitchin to sign a performance notice regarding Mitchell's use of sick leave in 2011. Mitchell pled not guilty to the charge, and on April 9, 2012, a disciplinary hearing was conducted on the matter.

Thereafter, the hearing officer issued a written decision, finding Mitchell guilty of insubordination. The hearing officer recommended an eight-day suspension without pay, with a warning that similar conduct in the future will result in more severe disciplinary punishment. On May 7, 2012, the RPD's Chief of Police, Richard J. McDonough, accepted the hearing officer's recommendation, and issued a written reprimand and an eight-day suspension without pay.

Mitchell then filed an action in lieu of prerogative writs in the Law Division seeking a trial de novo pursuant to N.J.S.A. 40A:14-150. The court issued a written decision on February 18, 2014, noting that a transcript had not been made of the

disciplinary hearing, and the hearing officer's decision and copies of the exhibits did not provide an adequate record for review of the disciplinary action. The court entered an order dated March 5, 2014, remanding the matter to the RPD for a rehearing on the record.

The hearing took place on June 13, 2014. Sergeant Charles Ribaudo testified that the RPD conducted an audit of its officers' use of sick time in 2011, and thereafter issued performance notices to several officers, including Mitchell. Ribaudo explained that when he provides such a notice to an officer, he meets with the officer to go over the narrative section of the document. Ribaudo then signs the notice where it states, "Issued by _____," and the officer signs where it states, "Received by _____."

Ribaudo testified that on January 25, 2012, he met with Mitchell to give him the performance notice about his use of sick time in 2011. Mitchell refused to sign the notice. Ribaudo said he explained to Mitchell that by signing the notice, he was only acknowledging receipt of the document. Mitchell told Ribaudo he did not accept the reprimand and he was not going to sign the notice.

Mitchell asked Ribaudo about the reasons for the reprimand, but Ribaudo could not answer Mitchell's question because he did not prepare the notice. He told Mitchell he would seek an answer

for him. Ribaudo then reported the matter to Kitchin, and another meeting was scheduled to give Mitchell a second chance to sign the document.

Ribaudo testified that he and Kitchin met with Mitchell on January 26, 2012. At the meeting, Kitchin ordered Mitchell to sign for receipt of the performance notice. Mitchell refused to comply with Kitchin's order. According to Ribaudo, Mitchell did not indicate he was going to speak with a union representative until he was leaving the meeting.

Kitchin testified that in January 2012, three officers received performance notices regarding their use of sick leave in 2011. According to Kitchin, the notices are a training tool, which recognize good performance or suggest the need to "correct the things that [are not] so good so they [do not] turn into major problems." Kitchin stated that the RPD's usual procedure is to have the notice typed and given to the officer, and then the person giving the notice to the officer signs it. Thereafter, the officer signs the document indicating that he received it.

Kitchin testified that Ribaudo had reported to him that Mitchell refused to sign his performance notice because Mitchell "said he had an issue with it." Kitchin asked Ribaudo if he explained to Mitchell that by signing the notice, Mitchell was only acknowledging that he had received it. Kitchin testified that

signing the notice had nothing to do with whether Mitchell agreed or disagreed with the notice.

Kitchin further testified that he spoke to the Chief and he was instructed to schedule a meeting with Mitchell. The purpose of the meeting was to give Mitchell another opportunity to sign the notice. On January 26, 2012, Kitchin met with Ribaudo and Mitchell. At the meeting, Kitchin asked Mitchell if he had spoken to Ribaudo about the notice, and Mitchell said he had. Kitchin asked Mitchell if he was going to sign the document, and Mitchell said he would not.

Kitchin asked Mitchell if Ribaudo had explained to him that signing the notice only indicated that he had received it, and it had nothing to do with whether he agreed or disagreed with the notice. According to Kitchin, Mitchell said he had spoken to Ribaudo "about that."

Kitchin further testified that he asked Mitchell why he refused to sign the notice, and Mitchell replied that he did not agree with the reprimand. Kitchin explained again that Mitchell was only signing the notice to indicate he had received it, and that his signature had nothing to do with whether he agreed or disagreed with the reprimand. Mitchell again refused to sign the notice.

Kitchin then ordered Mitchell to sign the notice, with the understanding that he was signing for receipt of the notice, and his signature did not have anything to do with whether he agreed or disagreed with the notice. Kitchin again asked Mitchell if he would sign the notice. Mitchell replied, "No." Kitchin then said the meeting was over. Mitchell stated he was going to call the union's attorney, and he left.

Mitchell testified that on January 25, 2012, Ribaudo presented him with the performance notice. Mitchell asked him to clarify the reason for the reprimand, but Ribaudo did not prepare the notice and he did not have any knowledge about it. Mitchell said he did not have an advance "warning" he would receive the notice.

Mitchell also testified that there was no evidence or proof that he had abused sick time. He said the RPD had no standard operating procedure or memo regarding excessive sick time. He claimed that anytime he had used sick leave, the RPD had signed off on it. He asserted that he had supplied doctors' letters and documents for his use of sick leave.

Mitchell said the performance notice did not set forth the RPD's sick leave policy, the amount of sick leave allowed, or the amount of sick leave he had taken in the previous year. Mitchell claimed that previously, an officer had signed a performance notice

and the notice had been used as a disciplinary action against the officer.

Mitchell conceded that in the past, he had signed a performance notice with a reprimand regarding his cell-phone use. Mitchell signed that notice because it came with a memo, which provided a statement of reasons for the reprimand. He said he refused to sign the performance notice regarding sick time because he asked for clarification. He said his refusal to sign the notice was not insubordination.

Mitchell further testified that when he met with Kitchin, Kitchin asked him why he had refused to sign the notice. Mitchell conceded that Kitchin gave him a second chance to sign the document, but he refused to do so because he was still "asking" for "clarity." Mitchell stated that Kitchin told him his signature was a mere formality to acknowledge receipt.

Nonetheless, Mitchell said he was not comfortable signing the document because "there [was] no clarification [as] to why [he] even got the reprimand." Mitchell stated that he would not sign and that he was going to call the union's attorney. Then, he "walked out."

On cross-examination, Mitchell was asked to explain the circumstances when his signature on a performance notice had been used against him. He claimed the Chief of Police had used his

signature "as a retaliatory tool." He said he had been in litigation with the RPD for the previous four or five years. He claimed the Chief was creating a paper trail on all officers in the RPD who had pending lawsuits against the department.

The hearing officer thereafter issued another decision, finding that Mitchell "clearly disobeyed" Kitchin's order to sign the performance notice. The hearing officer found that the order was lawful and clear. He also found that the meetings with Ribaudo and Kitchin were not an investigation. The hearing officer stated, "The purpose of the meetings [was] to issue the performance notice/reprimand and as acknowledgment of its receipt[,] obtain a signature by the officer."

The hearing officer noted that Mitchell had not written a report disagreeing with the reprimand, and he had not filed a grievance challenging it. The hearing officer pointed out that Mitchell had the entire evening between the two meetings to seek legal advice, but he did not do so.

The hearing officer also stated that a police department is a quasi-military operation, where compliance with all lawful orders is required. He wrote, "It is incumbent upon all members of the department to comply with any and all lawful orders, regardless of the form they are presented in (request, direct

A-3046-15T3

order, written order, verbal order, rules and regulations, attorney general[] directives, etc.)."

The hearing officer stated that, "A [p]olice [o]fficer must follow all lawful orders and if [the officer has] a problem with a particular order, [he may] seek grievance or other remedy after following the order." The hearing officer found that Mitchell understood the order but refused to obey. He found the RPD had met its burden of proof, and Mitchell was guilty of insubordination. The hearing officer stated that the eight-day suspension was "still appropriate."

On December 17, 2015, the trial judge heard oral argument on the matter and placed a decision on the record. The judge reviewed the testimony presented at the hearing and other evidence. The judge stated that the notice was a reprimand, not a form acknowledging receipt of the notice. She said the form used did not provide the factual basis for the reprimand.

The judge also stated that Mitchell did not believe the reprimand was correct, and Mitchell did not believe he had violated the RPD's sick-leave policy. The judge said that Mitchell had requested clarification before he signed the reprimand, and clarification was not provided. The judge found that Mitchell expected to receive clarification from Ribaudo. She stated,

"[t]here was no reason for [Mitchell] to contact his union representative pending receipt of that clarification."

The judge also stated that there was no evidence that Ribaudo advised Kitchin that Mitchell had asked for clarification. The judge said that there was no "general order" or regulation that required Mitchell to sign the reprimand. Receipt could have been memorialized by either Ribaudo or Kitchin, since they both witnessed Mitchell's receipt of the form.

The judge found that Mitchell had made a timely request for union representation pursuant to the principles set forth in NLRB v. J. Weingarten, Inc., 420 U.S. 251, 95 S. Ct. 959, 43 L. Ed. 2d 171 (1975), and applied in New Jersey as a matter of state law. The judge observed that Weingarten held that an employee has a right to union representation during an interview when the employee reasonably believes the "investigation" will result in disciplinary action. The judge stated that Mitchell's meeting with Ribaudo and Kitchin was "an investigation" for Weingarten purposes.

The judge found that the RPD violated Mitchell's Weingarten rights because he was not given the opportunity to have union representation at the meeting with Ribaudo and Kitchin. The judge also found that the RPD did not prove by a preponderance of the evidence that Mitchell was insubordinate or that he failed to obey

a lawful order. The judge found that initially, Ribaudo misunderstood or misrepresented the significance of the officer's signature on the form.

The judge entered an order dated December 17, 2015, which set aside the suspension and ordered the RPD to provide Mitchell with back pay and benefits for the period of the suspension. The RPD thereafter filed a motion for reconsideration. The judge denied that motion by order entered on February 19, 2016. On the order, the judge wrote that the RPD had not met the criteria for reconsideration. This appeal followed.

On appeal, the RPD argues that the trial court erred by finding that the RPD violated Mitchell's Weingarten rights. The RPD contends that Mitchell's meeting with Ribaudo and Kitchin was not an investigation of any kind. The RPD further argues that the record does not support the trial court's finding that Mitchell was not guilty of insubordination. The RPD contends Mitchell violated a direct order by refusing to sign the form.

The Borough of Roseland is a non-civil service jurisdiction, and the statutory framework for disciplinary proceedings against police officers in the Borough is governed by N.J.S.A. 40A:14-147 to -151. Ruroede v. Borough of Hasbrouck Heights, 214 N.J. 338, 343 (2013). The statutory scheme requires the employer to show

"just cause" for any suspension, termination, fine, or reduction in rank. Id. at 354 (citing N.J.S.A. 40A:14-147).

An officer is entitled to a hearing on the charges. Ibid. (citing N.J.S.A. 40A:14-147). If the charges are sustained after the hearing, the officer can seek review in the Superior Court, which hears the case de novo on the record established below. Id. at 355 (citing N.J.S.A. 40A:14-150). The trial court must, however, make its own findings of fact. Id. at 357 (citing In re Disciplinary Proceedings of Phillips, 117 N.J. 567, 578 (1990)).

When the trial court conducts its review of the record, it should give due deference to the hearing officer's conclusions regarding credibility, but "those initial findings are not controlling." Id. at 357 (quoting Phillips, supra, 117 N.J. at 579). The court must "make reasonable conclusions based on a thorough review of the record." Ibid. (quoting Phillips, supra, 117 N.J. at 580). The court is required to provide the officer "an independent, neutral, and unbiased" review of the disciplinary action. Ibid. (citing Phillips, supra, 117 N.J. at 580).

Findings of fact of a trial judge, sitting without a jury, will not be disturbed on appeal if they are supported by "adequate, substantial and credible evidence" in the record. Township of West Windsor v. Nierenberg, 150 N.J. 111, 132 (1997) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484

12

(1974)). However, the trial court's legal determinations are not entitled to any special deference. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Here, the trial court erred by finding that the RPD violated Mitchell's right to union representation. In Weingarten, the Court held that an employer's failure to provide union representation at an investigatory interview violated the National Labor Relations Act (NLRA) since the employee had asked for union representation and reasonably believed that the investigation might result in disciplinary action. Weingarten, supra, 420 U.S. at 256-60, 95 S. Ct. at 963-65, 43 L. Ed. 2d at 177-80 (citing 29 U.S.C.A. § 157).

The NLRA does not apply to public employees in New Jersey. In re Univ. of Med. & Dentistry of N.J., 144 N.J. 511, 527 (1996). However, the New Jersey Public Employment Relations Commission (PERC) adopted the Weingarten rule, in the exercise of its authority under the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1 to -43. In re Univ. of Med. & Dentistry of N.J., supra, 144 N.J. at 527. The Supreme Court held that PERC's application of the Weingarten rule was a "permissible construction" of New Jersey law. Id. at 528.

It is undisputed that Mitchell would have been entitled to union representation at the January 26, 2012 meeting with Ribaudo

and Kitchin if that meeting had been an investigation and Mitchell reasonably believed it might result in disciplinary action. Id. at 529 (citing Weingarten, supra, 420 U.S. at 252-53, 95 S. Ct. at 961-62, 43 L. Ed. 2d at 175). Here, however, the trial court erred by finding the RPD violated Mitchell's Weingarten rights.

As the record shows, the January 26, 2012 meeting was not investigatory. Ribaudo met with Mitchell on January 25, 2015. He presented Mitchell with the written reprimand and asked Mitchell to sign the form where it states, "Received by _____." Mitchell refused to sign the notice, and Ribaudo reported that to Kitchin.

The meeting the following day was held to give Mitchell another opportunity to sign the form. He again refused, even though Kitchin had explained to him that he was required to sign the form regardless of whether he agreed or disagreed with the basis for the reprimand.

Kitchin told Mitchell that his signature was only to confirm that he had received the form. Mitchell said he sought clarification of the reason for the reprimand, but Kitchin made clear that the meeting was only being held to give Mitchell an opportunity to sign the form acknowledging that he had received the written reprimand.

Thus, Mitchell's meeting with Ribaudo and Kitchin was not an investigation for Weingarten purposes. That meeting was only held

14 <span>A-3046-15T3</span>

to afford Mitchell another opportunity to sign the reprimand, indicating he had received it. Furthermore, Mitchell did not make a timely request for union representation. He did not indicate that he wanted to speak to a union representative until after he refused to comply with Kitchin's order that he sign the document.

We also conclude that the trial court erred by finding that Mitchell was not insubordinate. Mitchell's testimony makes abundantly clear that he did not agree with the reprimand. Mitchell stated that the notice failed to provide the factual basis for his misuse of sick leave in 2011. He claimed that, when necessary, he had provided the RPD with a doctor's note for the use of sick time.

It is clear that Mitchell refused to sign the form, not because his signature might be used against him in some other disciplinary matter, but rather because he believed the reprimand was not justified. This was not a valid reason for refusing to comply with the order that he sign the document and acknowledge its receipt. It is undisputed that Kitchin told Mitchell his signature was merely an acknowledgement of receipt, not an agreement to the reprimand.

The RPD could have used an alternative means to confirm that Mitchell had been provided with the notice, but it was not required to do so. Kitchin issued a lawful order to Mitchell directing him

to sign the notice. He refused to comply. Mitchell's request for clarification of the reasons for the reprimand has no bearing on his refusal. The January 26, 2012 meeting was held to obtain his signature, not to discuss the reasons for the reprimand. The record shows that Mitchell had other ways to obtain the clarification he was seeking. His request for clarification was not an excuse for refusing a lawful order that he sign the document.

Accordingly, we reverse the trial court's orders of December 17, 2015, and February 19, 2016, and reinstate Mitchell's eight-day suspension without pay.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3046-15T3