**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2600-17T1

G.Y.,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

TOWNSHIP OF HANOVER,

      Defendant-Respondent/
      Cross-Appellant.

_____

      Argued December 18, 2018 – Decided February 19, 2019

      Before Judges Rothstadt, Gilson, and Natali.

      On appeal from Superior Court of New Jersey, Law Division, Morris County, Docket No. L-0698-17.

      Shalom D. Stone argued the cause for appellant/cross-respondent (Stone Conroy LLC, attorneys; Shalom D. Stone and James D. DeBartolo, of counsel and on the briefs).

      Stephen E. Trimboli argued the cause for respondent/cross-appellant (Trimboli & Prusinowski, LLC, attorneys; Stephen E. Trimboli, of counsel and on the briefs; Lauren W. Kavanagh and Sarah Gober, on the briefs).

PER CURIAM

This appeal arises out of disciplinary charges brought by the Township of Hanover (Township) that resulted in the termination of employment of a police officer. The officer, G.Y.,[1] appeals from a January 2, 2018 judgment that denied his action to dismiss the disciplinary charges and vacate the decision of the Township to terminate his employment. The Township cross-appeals from a decision of the trial court to allow G.Y., on de novo review, to supplement the record with his testimony. We reject the arguments on both the appeal and cross-appeal and affirm.

I.

The Township terminated G.Y.'s employment as a police officer after finding he had committed disciplinary infractions, including two counts of misconduct, N.J.S.A. 40A:14-147. Those disciplinary infractions arose out of a domestic dispute between G.Y. and his wife, K.Y.

On June 18, 2014, K.Y. called the Township Police Department to report a domestic dispute. Police officers responded to the home. Upon arrival, an officer found G.Y. standing outside on the porch. G.Y. told the officer that his

_____

[1] Because the disciplinary charges involve allegations of domestic violence, we use initials to protect privacy interests and the confidentiality of the record. See R. 1:38-3(c)(12).

wife was "drunk again, like she is every night." The officer then entered the house and saw K.Y. walking out of a downstairs bathroom, crying and visibly upset. The officer later testified that K.Y. did not appear intoxicated. K.Y. informed the officer that she and G.Y were in the midst of a divorce proceeding, and they had gotten into an argument.

Later that evening, K.Y. provided the officer with a signed, written statement, which read:

> I, [K.Y.], hereby make the following voluntary statement. At approximately nine p.m. I was sitting in the TV room in chair, [G.Y.] was on couch, I asked him why he keeps moving the ottoman I use. He said why do you worry about that when you are destroying the family and filing for divorce. I am trying to make arrangements for Disney. I told him I was not going to Disney, we were getting a divorce. He said there was no reason to get divorced. I said there was because he is abusive. He then said he is not abusive. He then said his lawyer said I was being a bitch and was trying to take the houses in Arizona. He said if I try to take the houses in Arizona he would take me and the family down. He walked over and whispered this in my face. I then got up and walked into the study to get the house phone as I felt threatened. He followed me and said you are not calling the police and knocked the phone out of my hand. I then went to get my cell phone and he said again if I try to take his houses he will take me down. I was in the TV room. He pushed me down, slapped the cell phone out of my hand and to the ground, and said I am taking you down. He got on top of me on couch and put both hands tightly around my throat. I was screaming, trying to scream. He got off

3

of me and I ran toward the front door. He pushed me into the love seat in the front room and the love seat slid into the toys about one foot. I then got up and tried to get out of the front door. He said do not call police, I will lose my job and it would be your fault. I was on front porch. He gave me my cell phone. I went in bathroom, locked door and called 911. Outside the door he kept whispering not to call the police or it would be my fault if he lost his job.

Shortly after this incident, G.Y. was arrested and charged with simple assault, N.J.S.A. 2C:12-1(a)(1), based on the allegation that he injured his wife when he "put[ ] his hands around [her] throat causing red marks around her throat and also knock[ed] a cordless telephone out of her hand causing an injury to her right hand[.]" At that time, K.Y. was granted a domestic violence temporary restraining order (TRO) against G.Y.

On July 15, 2014, a consent order with civil restraints was entered in the divorce action between K.Y and G.Y. That consent order provided that K.Y. would dismiss her TRO against G.Y., but the dismissal would not be deemed an admission that G.Y. did not commit the alleged acts of domestic violence. Thereafter, the TRO and the charges of simple assault against G.Y. were dismissed.

In October 2014, the Township's police department began an internal affairs investigation of the June 18, 2014 incident. As part of the investigation,

a lieutenant conducted a recorded interview with K.Y on October 24, 2014, and a recorded interview with G.Y. on November 24, 2014. On March 2, 2015, the lieutenant submitted his internal affairs report. The report concluded that G.Y.'s actions on June 18, 2014, constituted a "domestic violence incident" and that G.Y. was not "truthful in answering [the] questions regarding [the] incident during [the] interview on" November 24, 2014.

The Chief of Police received the report on August 12, 2015, and on August 25, 2015, notice of charges were served on G.Y. The notice included two charges, both of which alleged misconduct under N.J.S.A. 40A:14-147. Charge one alleged that G.Y. assaulted his wife during an altercation. That charge also stated that G.Y. had received "several demeanor complaints involving women in [his] disciplinary history," and had received "a total of thirteen (13) sustained disciplinary charges since [he] w[as] hired with the Township of Hanover Police Department on August 17, 1992." Charge two alleged that G.Y. gave untruthful statements concerning the physical altercation with his wife during an internal affairs investigation interview. The recommended penalty for both charges was termination of employment.

G.Y. disputed the charges and requested an evidentiary hearing. Prior to the hearing, G.Y. moved to dismiss the disciplinary charges under the "forty-

five day rule" of N.J.S.A. 40A:14-147. A hearing officer heard oral argument on the motion to dismiss and recommended that the motion be denied. The Township adopted that recommendation.

The evidentiary hearing was conducted on September 23 and November 21, 2016. At the hearing, the Township presented testimony from five police officers who had responded to the residence on June 18, 2014, and the lieutenant who had conducted the internal affairs investigation. K.Y. also testified, but when she could not remember the events of June 18, 2014, her written statement concerning that evening was admitted into evidence and read into the record.

On March 9, 2017, the hearing officer, in a comprehensive thirty-eight-page opinion, reviewed the testimony and evidence presented during the hearing and determined that the "charges for misconduct as to both counts ha[d] been sustained." The hearing officer recommended termination of G.Y.'s employment. Shortly thereafter, the Township accepted and adopted the hearing officer's report and determinations with one exception that is not relevant to this appeal. G.Y. was then terminated from his employment as a police officer.

On March 24, 2017, G.Y. filed a complaint in the Law Division seeking a de novo review of the disciplinary charges and his termination in accordance with N.J.S.A. 40A:14-150. G.Y. also asserted a violation of the "forty-five day

rule" established in N.J.S.A. 40A:14-147. In conducting its review, the trial court allowed G.Y. to supplement the record with his own testimony.

Following two days of hearings, on January 2, 2018, the trial court entered a judgment and written statement of reasons finding G.Y. had engaged in "serious" misconduct warranting termination. Initially, the trial court ruled that the forty-five day rule did not apply to the charges of misconduct, and that to the extent that the rule was applicable to the remainder of the charges, those charges were brought within the required time. The trial court then found that the written statement by K.Y. was admissible as a recorded recollection under Rule 803(c)(5). N.J.R.E. 803(c)(5). In admitting that written statement, the trial court found that K.Y. could not recall the events of June 18, 2014, but she had given a written statement that same evening, and at the evidentiary hearing she testified that the written statement was drafted in her handwriting and she had signed the statement. The trial court then found that K.Y.'s written statement was "competent evidence" that was reliable and appropriate for the court to consider in its de novo review.

The trial court evaluated G.Y.'s testimony and found that, when considered on its own, it was sufficient to establish a predicate act of domestic violence in the form of harassment under N.J.S.A. 2C:33-4(c). In that regard,

7

the trial court found that G.Y. knew that K.Y. felt threatened, he knew that K.Y. wanted to call the police, but he twice directly interfered with K.Y.'s ability to call the police, and then refused to leave the home.

G.Y. now appeals the judgment entered by the trial court. The Township cross-appeals from the trial court's ruling allowing G.Y. to supplement the record and to testify before the trial court. We first address G.Y.'s appeal.

## II.

On his appeal, G.Y. challenges the de novo review by the Law Division and argues (1) the disciplinary charges were barred by the forty-five day rule; (2) the court relied on inadmissible hearsay; (3) the finding of misconduct was not supported by the evidence in the record; and (4) even if his conduct warranted sanctions, termination of employment was inappropriate under the doctrine of progressive discipline. We are not persuaded by any of these arguments.

A. The Forty-Five Day Rule

The Township is a non-civil service jurisdiction. Therefore, the statutory framework of N.J.S.A. 40A:14-147 to -151 governs disciplinary proceedings brought against police officers. Ruroede v. Borough of Hasbrouck Heights, 214 N.J. 338, 343 (2013). That framework has a "forty-five day rule" "for the filing

of a complaint alleging a violation of the internal rules and regulations of a law enforcement unit." Aristizibal v. City of Atlantic City, 380 N.J. Super. 405, 408-09 (Law Div. 2005); see N.J.S.A. 40A:14-147. In relevant part, the statute provides:

> A complaint charging a violation of the internal rules and regulations established for the conduct of a law enforcement unit shall be filed no later than the 45th day after the date on which the person filing the complaint obtained sufficient information to file the matter upon which the complaint is based. The 45-day time limit shall not apply if an investigation of a law enforcement officer for a violation of the internal rules or regulations of the law enforcement unit is included directly or indirectly within a concurrent investigation of that officer for a violation of the criminal laws of this State. The 45-day limit shall begin on the day after the disposition of the criminal investigation. The 45-day requirement of this paragraph for the filing of a complaint against an officer shall not apply to a filing of a complaint by a private individual.
>
> A failure to comply with said provisions as to the service of the complaint and the time within which a complaint is to be filed shall require a dismissal of the complaint.
>
> [N.J.S.A. 40A:14-147.]

The rule applies only to violations of internal rules and regulations; it does not apply to charges of misconduct. McElwee v. Borough of Fieldsboro, 400 N.J. Super. 388, 394 (App. Div. 2008). Moreover, in calculating the forty-five-

day timeframe, "it is not the happening of the event giving rise to discipline that starts the clock for purposes of evaluating timeliness, but the receipt of 'sufficient information' by the one who is authorized to file the charge that is significant." Roberts v. Div. of State Police, 191 N.J. 516, 524 (2007).

Here, we affirm the trial court for two reasons. First, as just noted, the rule applies only to violations of internal rules and regulations; it does not apply to charges of misconduct. Second, the violations of the departmental rules and regulations were brought within the requisite time. The person authorized to file the charges against G.Y. was the Township Chief of Police. The record establishes that the Chief received the internal affairs investigation report on August 12, 2015. Thirteen days later, on August 25, 2015, notice of the charges were filed against G.Y. Consequently, the charges were filed within the forty-five day timeframe.

B. The Findings of Misconduct

G.Y. argues that the trial court relied on inadmissible hearsay in finding that he committed misconduct. Specifically, he challenges the court's decision to admit and consider K.Y.'s written statement from June 18, 2014. G.Y. contends that the statement is inadmissible because the court failed to consider its trustworthiness. He also argues that, because K.Y.'s statement is

inadmissible hearsay, the court's finding of misconduct violates the residuum rule and should be overturned. G.Y. then argues that the trial court only relied on his testimony in finding misconduct, but his testimony did not support a finding of misconduct. We begin our analysis of these arguments by identifying the standard of review under N.J.S.A. 40A:14-150 and our scope of review on appeal.

N.J.S.A. 40A:14-150 permits police officers in non-civil service municipalities to seek de novo review of disciplinary actions by the Law Division of the Superior Court. Specifically, the statute provides:

> Any member or officer of a police department or force in a municipality . . . , who has been tried and convicted upon any charge or charges, may obtain a review thereof by the Superior Court . . . . The court shall hear the cause de novo on the record below and may either affirm, reverse or modify such conviction.
>
> [N.J.S.A. 40A:14-150.]

The statute further provides that "[e]ither party may supplement the record with additional testimony subject to the rules of evidence." Ibid.

Permitting de novo review by the Law Division is designed "to provide employees of non-civil service communities with an independent tribunal to review their disciplinary actions." Ruroede, 214 N.J. at 357 (quoting In re Phillips, 117 N.J. 567, 578 (1990)). Thus, the Law Division "consider[s] the

matter 'anew, afresh [and] for a second time.'" Ibid. (second alteration in original) (quoting Phillips, 117 N.J. at 578). Accordingly, the court "makes its own findings of fact." Ibid. (quoting Phillips, 117 N.J. at 578). While the court "must give due deference to the conclusions drawn by the original tribunal regarding credibility, those initial findings are not controlling." Ibid. (quoting Phillips, 117 N.J. at 579). Instead, the court "review[s] the record to determine whether there is sufficient, competent evidence to prove the charges against [the officer] by a preponderance of the evidence." Id. at 361.

Appellate courts play "a limited role in reviewing the de novo proceeding." Phillips, 117 N.J. at 579. "[T]he court's 'function on appeal is not to make new factual findings but simply to decide whether there was adequate evidence before the [ ] Court to justify its finding of guilt.'" Ibid. (second alteration in original) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). Accordingly, an appellate court should not disturb the de novo findings of the trial court unless "the decision below was 'arbitrary, capricious or unreasonable' or '[un]supported by substantial credible evidence in the record as a whole[.]'" Ibid. (first alteration in original) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 580 (1980)). An appellate court does not, however, defer to the trial court's legal conclusions. Cosme v. Borough of E. Newark Twp. Comm., 304 N.J.

Super. 191, 203 (App. Div. 1997) (first citing In re J.W.D., 149 N.J. 108, 117 (1997); then citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Hearsay that is admissible pursuant to the rules of evidence is legally competent evidence. See Ruroede, 214 N.J. at 361-62 (referring to hearsay evidence properly admitted under Rule 803(b)(1) as "competent evidence"). Under Rule 803(c)(5), hearsay evidence that is a "recorded recollection" is admissible. Rule 803(c)(5) defines a recorded recollection as:

> A statement concerning a matter about which the witness is unable to testify fully and accurately because of insufficient present recollection if the statement is contained in a writing or other record which (A) was made at a time when the fact recorded actually occurred or was fresh in the memory of the witness, and (B) was made by the witness or under the witness' direction or by some other person for the purpose of recording the statement at the time it was made, and (C) the statement concerns a matter of which the witness had knowledge when it was made, unless the circumstances indicate that the statement is not trustworthy; provided that when the witness does not remember part or all of the contents of a writing, the portion the witness does not remember may be read into evidence but shall not be introduced as an exhibit over objection.
>
> [N.J.R.E. 803(c)(5).]

We review a trial court's decision to exclude or admit evidence under the hearsay rules for an abuse of discretion. Estate of Hanges v. Metro. Prop. & Cas. Ins.

Co., 202 N.J. 369, 383-84 (2010) (citing Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999)).

Here, the trial court did not abuse its discretion in finding K.Y.'s signed, written statement, dated June 18, 2014, admissible under Rule 803(c)(5). First, K.Y. had a limited memory concerning the incident that occurred on June 18, 2014. Specifically, she testified that she recalled having "a physical incident" with G.Y., and that because of the incident she had called the police, but she could not "recollect details" of the event. Moreover, when asked whether she recalled preparing a written statement regarding the events on June 18, 2014, she answered: "I believe I did." Nonetheless, when she reviewed the document to see if it would refresh her recollection, she explained that she recognized her signature on the document, but the document itself did not help her recall details of the incident.

Next, the statement was made at approximately 11:15 p.m. on the evening of the incident. That is, the statement was made less than two-and-a-half hours from the time of the alleged incident. Accordingly, the second requirement of Rule 803(c)(5) is satisfied as the statement was made at a time when the facts recorded were fresh in K.Y.'s memory.

Third, the statement was made by K.Y. as evidenced by her testimony that she believed she gave the police a statement on that date, and that she recognized her signature on the document. Lastly, the statement concerns a matter of which K.Y. had knowledge. K.Y. was personally involved in the incident.

G.Y. argues that the court's decision to admit the statement under Rule 803(c)(5) was an error because the court did not address the trustworthiness of K.Y.'s statement. That argument is not persuasive. Rule 803(c)(5) allows courts to bar a recorded statement when "the circumstances indicate that the statement is not trustworthy[.]" N.J.R.E. 803(c)(5). Here, there was no indication of untrustworthiness. In that regard, the trial court found that K.Y. had knowledge about the incident when she made the statement. That finding satisfied the rule's requirements. See N.J.R.E. 803(c)(5)(C); see also Biunno, Weissband & Zegas, Current N.J. Rules of Evidence, 1991 Supreme Court Committee Comment on N.J.R.E. 803(c)(5) (2018) ("The rule permits the exclusion of the recorded statement if the circumstances indicate that the statement is untrustworthy.").

Because the trial court did not abuse its discretion in admitting K.Y.'s statement, it also did not violate the residuum rule. K.Y.'s statement, as a recorded recollection, constituted legally competent evidence that supported the finding of misconduct against G.Y. See Ruroede, 214 N.J. at 361-62 (finding

15

hearsay evidence properly admitted under Rule 803(b)(1) is "competent evidence").

Moreover, even if the statement is considered as hearsay, there was sufficient other evidence to support the finding of misconduct. In an administrative hearing, "[h]earsay may be employed to corroborate competent proof, or competent proof may be supported or given added probative force by hearsay testimony." Id. at 359 (quoting Weston v. State, 60 N.J. 36, 51 (1972)). Nevertheless, "a fact finding or a legal determination cannot be based on hearsay alone." Ibid. (quoting Weston, 60 N.J. at 51). Instead, a hearing officer's decision must possess "a residuum of legal and competent evidence in the record to support it." Ibid. (quoting Weston, 60 N.J. at 51). This "residuum rule" is codified in the Uniform Administrative Procedure Rules, N.J.A.C. 1:1-15.5(b), and provides: "Notwithstanding the admissibility of hearsay evidence, some legally competent evidence must exist to support each ultimate finding of fact to an extent sufficient to provide assurances of reliability and to avoid the fact or appearance of arbitrariness."

Here, the record before the trial court included the testimony of five officers who responded to the house on June 18, 2014, the testimony of the lieutenant who conducted the internal affairs investigation, and the testimony of

G.Y. That record supports the court's conclusion that harassment had been demonstrated by a preponderance of the evidence based on G.Y.'s attempts to prevent K.Y. from calling the police, his following of K.Y. through the house as she attempted to call the police, and his act of hitting the phone out of K.Y.'s hand. See N.J.S.A. 2C:33-4; Mann v. Mann, 270 N.J. Super. 269, 271 (App. Div. 1993).

C. The Termination of Employment

G.Y. next argues that even if misconduct occurred, it did not warrant termination of his employment. Instead, he contends that the court should have imposed progressive discipline. We disagree.

On de novo review, a court may "alter a sanction imposed by an administrative agency only 'when necessary to bring the agency's action into conformity with its delegated authority. The [c]ourt has no power to act independently as an administrative tribunal or to substitute its judgment for that of the agency.'" In re Herrmann, 192 N.J. 19, 28 (2007) (quoting In re Polk, 90 N.J. 550, 578 (1982)). "[W]hen reviewing administrative sanctions, 'the test . . . is "whether such punishment is so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness."'" Id.

A-2600-17T1

at 28-29 (second alteration in original) (quoting Polk, 90 N.J. at 578); see also In re Carter, 191 N.J. 474, 484 (2007).

Appellate courts will uphold "dismissal of employees, without regard to whether the employees have had substantial past disciplinary records, for engaging in conduct that is unbecoming to the position." Herrmann, 192 N.J. at 34. In that regard, our Supreme Court has explained:

> [P]rogressive discipline is not "a fixed and immutable rule to be followed without question" because "some disciplinary infractions are so serious that removal is appropriate notwithstanding a largely unblemished prior record." "Thus, progressive discipline has been bypassed when an employee engages in severe misconduct, especially when the employee's position involves public safety and the misconduct causes risk of harm to persons or property."
>
> [In re Stallworth, 208 N.J. 182, 196-97 (2011) (citations omitted) (first quoting Carter, 191 N.J. at 484; then quoting Herrmann, 192 N.J. at 33).]

Police officers are held to a high standard of responsibility and conduct. Twp. of Moorestown v. Armstrong, 89 N.J. Super. 560, 566 (App. Div. 1965). "[A] police officer [cannot] complain that he or she is being held to an unfairly high standard of conduct. Rather, 'it is one of the obligations he [or she] undertakes upon voluntary entry into the public service.'" Phillips, 117 N.J. at 577 (quoting In re Emmons, 63 N.J. Super. 136, 142 (App. Div. 1960)). Indeed,

a finding of misconduct against a police officer "need not be predicated upon the violation of any particular rule or regulation, but may be based merely upon violation of the implicit standard of good behavior which devolves upon one who stands in the public eye as an upholder of that which is morally and legally correct." In re Tuch, 159 N.J. Super. 219, 224 (App. Div. 1978) (first citing Emmons, 63 N.J. Super. at 140; then citing Asbury Park v. Civil Serv. Dep't., 17 N.J. 419, 429 (1955)).

Here, G.Y.'s misconduct was sufficiently egregious and unbecoming to his office to warrant removal even if he had no prior disciplinary history. Moreover, G.Y. had thirteen sustained complaints over the course of his twenty-four-year career. Consequently, the determination that G.Y.'s removal was justified is supported by substantial, credible evidence in the record and was not arbitrary, capricious, or unreasonable.

## III.

On its cross-appeal, the Township challenges the trial court's decision to allow G.Y. to supplement the record with his own testimony. The Township initially consented to G.Y. testifying before the trial court. Nevertheless, it asserts that G.Y.'s testimony "went well beyond the scope of what was intended by the Legislature when it provided parties with the right to 'supplement the

19

record' on appeal under N.J.S.A. 40A:14-150." The Township argues that as G.Y. did not testify at the disciplinary hearing, his testimony at the de novo review did not add to "previously presented evidence, but instead presented an entirely new facet to the case."

The Township's narrow interpretation of "supplementing the record" is not supported by the language of N.J.S.A. 40A:14-150, the relevant case law, or the Legislature's goals in permitting de novo review of disciplinary proceedings for police officers in non-civil service municipalities. N.J.S.A. 40A:14-150 provides that on a de novo review by the Superior Court, "[e]ither party may supplement the record with additional testimony subject to the rules of evidence." The statute contains no language limiting the extent to which the record may be supplemented.

Moreover, in Grasso v. Borough Council of Glassboro, 205 N.J. Super. 18 (App. Div. 1985), we broadly interpreted a party's right to supplement the record on a de novo review under N.J.S.A. 40A:14-150. See id. at 24-27. Specifically, we found that "[t]here can be no question but that the source statute to N.J.S.A. 40A:14-150 was to afford a public employee not under civil service with a 'new trial.'" Id. at 26. We went on to explain that the purpose of the 1981 Amendment to N.J.S.A. 40A:14-150 was "to encourage a de novo trial on the record below

but at the same time to permit additional testimony at the hearing in the same manner that testimony is adduced on appeal to the Commission by a public employee in a municipality governed by the Civil Service Act [N.J.S.A. 11A:1-1 to 12-6]." Id. at 27. Notably, on a de novo review before the Commission, a public employee may present "all relevant evidence and testimony[.]" Id. at 26 (citing In re Darcy, 114 N.J. Super. 454, 459 (App. Div. 1971)).

Here, the trial court permitted G.Y. to supplement the record with his own testimony. In that testimony, G.Y. discussed the domestic dispute that occurred on June 18, 2014. Thus, the testimony was relevant to the disciplinary charges filed against him. Accordingly, G.Y.'s testimony appropriately supplemented the record because it provided additional information on the incident underlying the disciplinary charges.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2600-17T1