**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4034-18
A-4035-18

IN THE MATTER OF
VICTOR VAZQUEZ,
MARK GUTIERREZ,
JOSEPH GONZALES,
ROCCO DUARDO,
JUSTIN DE LA BRUYERE,
and CITY OF HACKENSACK
POLICE DEPARTMENT.

_____

Argued September 21, 2021 – Decided October 21, 2021

Before Judges Fisher, Currier and DeAlmeida.

On appeal from the New Jersey Civil Service Commission, Docket Nos. 2018-2412, 2018-2471, and 2018-2472.

Raymond R. Wiss argued the cause for appellant/cross-respondent City of Hackensack Police Department in A-4034-18 and as respondent in A-4035-18 (Wiss & Bouregy, PC, attorneys; Raymond R. Wiss, of counsel; Timothy J. Wiss and Thomas K. Bouregy, Jr., on the briefs).

Charles J. Sciarra argued the cause for appellant Mark Gutierrez in A-4035-18 (Sciarra & Catrambone, LLC, attorneys; Charles J. Sciarra, of counsel; Frank C. Cioffi, on the briefs).

Catherine M. Elston argued the cause for cross-appellants/respondents Victor Vazquez and Rocco Duardo in A-4034-18 (C. Elston & Associates, LLC, attorneys; Catherine M. Elston, of counsel and on the briefs).

Dominic L. Giova, Deputy Attorney General, argued the cause for respondent New Jersey Civil Service Commission in A-4034-18 and A-4035-18 (Andrew J. Bruck, Acting Attorney General, attorney; Jane C. Schuster, Assistant Attorney General, of counsel in A-4034-18; Sookie Bae-Park, Assistant Attorney General, of counsel in A-4035-18; Dominic L. Giova, on the briefs).

PER CURIAM

In these back-to-back appeals, we consider the Civil Service Commission's decision imposing a six-month suspension on Hackensack Police Officers Rocco Duardo and Victor Vasquez, and its decision to remove Officer Mark Gutierrez from employment. The City of Hackensack Police Department (City) sought removal for all three officers. The officers argued for lesser penalties.

The sanctions were imposed after a determination by the Administrative Law Judge and the Commission that the officers conducted an unlawful, warrantless search of a private citizen's home and later fabricated the reasons for their actions. Gutierrez was additionally charged with and found to have prepared a false and misleading report concerning the events.

2

In the Duardo and Vazquez matters, the City appeals from the Commission's decision not to remove the officers as well as other aspects of its ruling. Vazquez and Duardo cross-appeal, contending the Commission erred in not accepting the ALJ's recommended suspension of ninety days.

Gutierrez appeals from the substantiation of charges against him and asserts the penalty of removal is excessive. In light of the "substantial deference" we give an agency's imposition of a disciplinary sanction, we affirm the Commission's decisions and penalties issued in both matters. Matter of Hendrickson, 235 N.J. 145, 159 (2018).

I.

A.

These disciplinary matters arose from the investigation undertaken by the Internal Affairs Department (IA) of the Hackensack Police Department (HPD) after it received an anonymous letter describing a cover-up of events that occurred at a specified address in December 2016. Following the investigation, notices of disciplinary action were served on Officers Duardo, Vazquez, and Gutierrez (the officers). Following a disciplinary hearing, the charges were sustained, and the IA issued the officers Final Notices of Disciplinary Action (FNDA), removing them from employment.

 A-4034-18

The FNDA stated:

> On or about December 28, 2016, together with other members of the [HPD], you conducted, and conspired to conduct, an illegal warrantless search of a residence located at [a specific address], Apt. [A]. In connection with such search, entry to the referenced apartment was achieved by tampering with the entrance lock/door. While conducting the foregoing warrantless search, you illegally seized, and conspired to seize, without a warrant, personal property of . . . the resident [of the apartment].

The FNDA issued to Gutierrez included this additional language:

> In addition to the foregoing, you knowingly filed false, misleading and inaccurate police reports with respect to the events relating to the above referenced warrantless search of Apartment [A].

B.

The officers appealed the decision to the Office of Administrative Law. The ALJ presided over eight days of hearings—with testimony from the investigating officer, the officers involved in the incident,[1] and other representatives of the City and HPD. The ALJ also reviewed documents

---

[1] Two other officers, in addition to Duardo, Vazquez, and Gutierrez, were also involved in this incident.

4                                                           A-4034-18

including investigation reports, IA investigation notes, emails, surveillance videos,[2] and audio recordings.

The officers contended they were instructed by a HPD Captain to go to Apt. A to conduct a weapons investigation. They testified that upon entering the building, they were advised by an anonymous resident that he heard screaming from Apt. A and there might be an unattended child in the apartment.

Gutierrez documented the events in an investigation report, describing the incident as a "Narcotics Investigation" and "Welfare Check." The report stated:

> On this day myself, Detective Lt. Sybell, Detective Duardo, Detective Gonzalez and P.O. Vazquez responded to . . . Avenue to check for narcotic activity. Upon our arrival we began walking through the building at which time we were met by a resident who requested to remain anonymous. This individual informed us that he believed there was an unattended child left in apartment [A].
>
> Upon receiving this information we responded to this apartment and began knocking on the apartment door. After a short time no one answered the door. While standing outside we discovered this door was left insecure [sic]. At this time a check of this residence was conducted at which time we discovered there was no one home. Upon completion of this check the apartment was secured when we left.

---

[2] There was surveillance video from cameras located inside the apartment building showing the officers' entry into the building and their actions once inside.

The IA investigating officer testified regarding his interviews with two tenants who lived on the same floor as the occupants of Apt. A. Neither heard screaming or a baby or child crying. The occupants of Apt. A were not home at the time of the December 2016 incident and were not aware police had been in their residence until the IA officer informed them later.

In her findings, the ALJ noted the testimony of the officers and the surveillance footage. She found the owners of the building provided a key to the HPD and therefore they were "authorized by the building's owner to enter the building for law-enforcement purposes, including suspected narcotics/weapons activity." However, the ALJ found the surveillance footage showed the officers walking "directly to the third floor (arriving at 12:41) and to Apt. A without encountering or speaking with anybody." According to the ALJ, the officers stood at the door for several minutes while one of them placed "his ear to the door" and "attempted to look under the apartment door but was unable to see anything or anyone."

The ALJ found that "[t]he lock to Apt. A cannot be seen on the video and no officer is actually seen tampering with the lock or door." Therefore, the ALJ found the evidence "inconclusive as to whether any officer . . . tampered with the lock to Apt. A or whether the door was unlocked upon the officers' arrival."

6

The ALJ noted the surveillance showed that about six minutes "after arriving at Apt. A, [officers] Vazquez, Duardo and de la Bruyere spoke with [a resident] at his apartment door across the hall from Apt. A, and then [spoke with a second resident of the same apartment] . . . ." According to the ALJ, following these conversations, the officers "continue to stand at or around Apt. A, with no visible change in their conduct or demeanor." She found that approximately two and a half minutes after speaking with the residents, "Vazquez walks directly to Apt. A and is the first to enter the apartment." Officers de la Bruyere, Gutierrez, and Duardo followed. The officers spent "about six minutes inside" the apartment and then left the building.

The ALJ made the following findings:

> The officers did not have a warrant when they entered Apt. A, but claim that they entered the unlocked apartment to check for an unattended child based on a statement made by [a resident of an apartment on the same floor]. Their testimony concerning [that resident's] report of an unattended child and his request to remain anonymous, however, was not credible. Apart from the officers' own testimony, they offered no evidence to support their assertion that [the resident] indicated that there was an unattended child in Apt. A. [The resident] did not testify to corroborate the officers' testimony, and nobody testified, or even indicated in a recorded statement that they heard a child in or around Apt A on the morning of December 28, 2016. The officers stood outside Apt. A for about six and a half minutes before speaking with [the resident], and

A-4034-18

remained at or around Apt. A for an additional eight minutes before entering the apartment, and not one officer heard a child inside that apartment.

After speaking with [the resident], the officers' behavior on the video did not appear to change in any way—they continued to mill around the third floor as they did earlier and their behavior did not reflect any sense of urgency or concern that someone could potentially be in danger in Apt. A. There is also no evidence of any type of follow-up by the officers or HPD to ascertain further information about a reported child.

The ALJ found the "officers were not informed that there was an unattended child in Apt. A at that time, and that the officers' conversation with [the resident] did not trigger or create an exigent circumstance or emergency situation." The ALJ made these findings based on her "review of the video, [her] assessment of the officers' testimony, and the absence of any testimony from an impartial witness corroborating the report of an unattended child or that a child was heard in the apartment that morning."

The ALJ found the "credible evidence" supported the finding that "no exception to the warrant requirement applies here and that, therefore, the warrantless search of the apartment was unjustified and improper." However, the ALJ found "the evidence is inconclusive as to whether the officers planned

8

or conspired to conduct an unauthorized or improper warrantless search of Apt A, or to seize personal property of [the residents of Apt. A]."

The ALJ then addressed Gutierrez's investigation report for the December 28, 2016 incident. She found:

> The Investigation Report . . . documenting the events of December 28, 2016 . . ., which was prepared by Gutierrez and reviewed by de la Bruyere, does not mention that Riotto and de la Bruyere also responded to [the building]. More importantly, while Gutierrez was not on the third floor the entire time and may not have had firsthand knowledge of some of the events that occurred, I FIND that the report falsely indicates that while walking through the building Gutierrez and the other officers . . . were met by a resident who informed them that he believed there was an unattended child left in Apt. A. Even if Gutierrez did not speak directly with [the resident on the same floor], and only heard of a possible unattended child from Sybel, as he testified, the report does not reflect this. The report also states that "upon receiving" this information concerning the unattended child, they responded to the apartment "and began knocking on the apartment door." The report continues: "After a short time no one answered the door. While standing outside we discovered this door was left insecure [sic]." Contrary to this written report, the officers not only testified that it was [the resident on the same floor] who reported the unattended child, but that the unlocked door was discovered before even speaking with [that resident]. I FIND that the report is not simply vague, it contains misleading and inaccurate information.
>
> . . . .

9

A-4034-18

> I FIND, therefore, that Gutierrez wrote . . . the filed Investigation Report of December 28, 2016, which contained knowingly false, misleading, and inaccurate information with respect to events relating to the search of Apt. A.

The ALJ concluded the officers had not demonstrated an exception to the warrant requirement to permit their entry into Apt. A. She rejected the officers' assertion of the community-caretaking doctrine, stating:

> The [officers] all concede that they had no warrant to enter Apt. A. They left headquarters intending to make contact with [the occupant of Apt. A] and further the weapons investigation. After waiting outside the apartment for about fourteen minutes, the four officers entered the apartment. I was not convinced by the officers' testimony that they were informed that there was an unattended child in Apt. A that morning, or that they entered the apartment in response to a report of an unattended child.

The ALJ concluded there was "no evidence of any immediate danger or urgent need for police action. Consequently, there did not exist any objectively reasonable emergency or species of exigent circumstances to justify their entry into Apt. A, and the community caretaking exception to the warrant requirement cannot apply."

The ALJ considered each charge and found that the following charges were sustained as to all three officers: N.J.A.C. 4A:2-2.3(a)(1), incompetency, inefficiency or failure to perform duties; N.J.A.C. 4A:2-2.3(a)(6), conduct

10

unbecoming; N.J.A.C. 4A:2-2.3(a)(7), neglect of duty; and N.J.A.C. 4A:2-2.3(a)(12), other sufficient cause. The ALJ also sustained violations of several HPD Rules and Regulations.

1.

The City sought removal of all of the officers. In considering the penalty to be imposed against Duardo and Vazquez for their improper actions, the ALJ stated that "conduct[ing] an improper warrantless search" of a private citizen's residence was "a serious charge, particularly considering that a police officer's primary duty is to enforce and uphold the law." However, she noted that Duardo and Vazquez went to Apt. A to conduct a legitimate law enforcement investigation and only entered the apartment after a commanding officer directed them to do so. In addition, neither officer went into the residence to further a personal interest. Nonetheless, the ALJ concluded that the officers "knew, or should have known, that the search of Apt. A without a warrant was not a legitimate one because no exigent circumstance or emergency existed."

Because of the expressed mitigating factors, the ALJ found Duardo's and Vazquez's actions were "insufficiently severe to render" them unsuitable to continue in their respective positions with the HPD. She concluded that "the penalty of removal is excessive, and that progressive discipline should apply."

Therefore, she found "a ninety-day suspension is more appropriate and proportionate to the offense." The ALJ ordered the reinstatement of Vazquez and Duardo to their position as patrolmen and they were entitled to any applicable back pay and benefits.

2.

In assessing the appropriate penalty against Gutierrez, the ALJ acknowledged the seriousness of the offenses but found his "actions were insufficiently severe to render him unsuitable to continue in his position as detective, . . . the penalty of removal is excessive, and that progressive discipline should apply." Therefore, the ALJ concluded "a 150-day suspension is the more appropriate and proportionate discipline." She ordered his reinstatement as a detective and the issuance of any back pay and benefits.

C.

In its April 8, 2019 decision, the Commission agreed with the ALJ's credibility assessments and determinations regarding the charges. The Commission found that the officers improperly entered the apartment without a warrant, and that the officers' testimony that they entered the apartment following the report of an unattended child was not credible. Consistent with the ALJ's fact findings, the Commission determined it was inconclusive whether

the officers had removed any property from the apartment and there was no conclusive evidence indicating the officers conspired to conduct a warrantless search.

However, the Commission did not adopt the ALJ's recommended penalties. In addressing Duardo and Vazquez, the Commission described their actions of entering an apartment without a warrant in the absence of any emergent circumstances as "not acceptable and . . . deserving of a severe punishment" and "of more than a 90-day suspension given the seriousness of their actions." The Commission found that "the appropriate penalty is a six-month suspension . . . which will serve as an indication that any further infractions committed by them will potentially subject them to removal from employment." The Commission found the officers were entitled to back pay, benefits, and seniority for the period after the imposition of the six-month suspension up to their dates of reinstatement.

In its review of Gutierrez's matter, the Commission also adopted the ALJ's conclusions that Gutierrez improperly entered the apartment without a warrant and was responsible for a false and misleading report regarding the incident. It characterized these actions as "extremely serious offenses" and "sufficiently

A-4034-18

egregious to warrant the penalty of removal." The Commission found "the action of the appointing authority in removing . . . Gutierrez was appropriate."

## II.

Our review of the Commission's decisions is limited, In re Stallworth, 208 N.J. 182, 194 (2011), as its determinations are entitled to "a strong presumption of reasonableness." In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001) (quoting In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993)). To reverse an agency's judgment, we "must find the agency's decision to be 'arbitrary, capricious, or unreasonable, or [] not supported by substantial credible evidence in the record as a whole.'" Stallworth, 208 N.J. at 194 (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)).

We may not "substitute [our] own judgment for the agency's, even though [we] might have reached a different result." Ibid. In addition, the ALJ's factual findings and credibility determinations must be given "due regard." Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 587 (1988) (quoting Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)).

The deferential nature of our review also applies to disciplinary sanctions. In re Herrmann, 192 N.J. 19, 28 (2007). "Traditionally, we give substantial deference to an agency's imposition of a disciplinary sanction, based on its

'expertise and superior knowledge of a particular field.'" In re Hendrickson, 235 at 158-59 (quoting Herrmann, 192 N.J. at 28).

"In light of the deference owed to such determinations, when reviewing administrative sanctions, the test . . . is whether such punishment is so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness." Id. at 159 (quoting Herrmann, 192 N.J. at 28-29) (internal quotation omitted). "That standard gives a wide berth of discretion." Ibid. "Only a patently unreasonable sanction would call for this [c]ourt's intervention." Ibid. "[C]ourts should take care not to substitute their own views of whether a particular penalty is correct for those of the body charged with making that decision." In re Carter, 191 N.J. 474, 486 (2007).

A.

On appeal, the City asserts that police officers are held to a higher standard of conduct than a typical public employee and that this factor outweighs the doctrine of progressive discipline. The City contends that the Commission's imposition of a six-month suspension for Duardo and Vazquez is so patently unreasonable that it requires this court's intervention. The City seeks the penalty of removal for these officers.

A-4034-18

In its review of the ALJ's recommendations regarding Duardo and Vazquez, the Commission found that a more severe penalty was warranted than a ninety-day suspension. The Commission agreed that "a law enforcement officer is held to a higher standard than a civilian public employee." The Commission stated: "The illegal entry of a law enforcement officer into a member of the public's home is not acceptable and is deserving of a severe punishment. Such actions erode the public trust in the law enforcement community."

However, as stated, the Commission found there were "mitigating factors [that justified] a penalty less severe than removal." It determined the appropriate penalty was a six-month suspension. Although we might differ regarding the right sanction, it is not our role to substitute our own views. We are satisfied the Commission's decision was not arbitrary or capricious as it was supported by the substantial credible evidence in the record. Therefore, we affirm the penalty imposed by the Commission on Duardo and Vazquez.

The City raises several other arguments in its appeal regarding Duardo and Vazquez. Specifically, the City asserts the Commission erred in finding the City did not prove the charge of misconduct under N.J.S.A. 40A:14-147 and did

not establish the elements of a civil conspiracy. We find no merit to these contentions.

N.J.S.A. 40A:14-147 does not apply to a civil service jurisdiction such as the City. See Borough of Franklin v. Smith, 466 N.J. Super. 487, 496 (App. Div. 2021) (citing Ruroede v. Borough of Hasbrouck Heights, 214 N.J. 338, 343 (2013)) (stating that "[p]roceedings governing the termination of a police officer in a non-civil service jurisdiction are set forth in N.J.S.A. 40A:14-147 to -151.").

In considering the allegations of a civil conspiracy, both the ALJ and the Commission found the evidence was inconclusive whether a conspiracy existed at the time of the officers' entry into the apartment. We see no reason to disturb the Commission's finding that the City did not establish the charge by a preponderance of the evidence.

Finally, the City requests we reverse the Commission's decision to award Vazquez and Duardo back pay and benefits. We decline to do so as the Commission acted within its discretion in awarding back pay and benefits. See N.J.A.C. 4A:2-2.10(a) ("Where a disciplinary penalty has been reversed, the Commission shall award back pay, benefits, seniority or restitution of a fine. Such items may be awarded when a disciplinary penalty is modified.").

A-4034-18

B.

In their cross-appeal, Duardo and Vazquez assert their testimony regarding an unattended child in Apt. A was credible and justified the warrantless search. They further contend the Commission and ALJ failed to address their motion for summary decision regarding conflicts of interest they allege tainted the disciplinary process. We are unconvinced by either contention.

The Commission concluded the City presented sufficient proofs to show by a preponderance of the evidence that the officers' entry into the apartment was unlawful. There is sufficient credible evidence to support the agency's conclusion. The IA investigating officer testified regarding the details of his investigation and produced documents relating to the investigation. Included in the documents were witness statements from multiple residents in the apartment building; none of the witnesses reported hearing a child in distress on December 28, 2016.

In addition, the City submitted video from the apartment building's security cameras. In reviewing the video, the ALJ made fact findings regarding the officers' behavior. Although the officers testified that a neighbor informed them of the unattended child, the ALJ did not find this testimony credible.

18

Instead, the ALJ found the "credible evidence" supported a finding that "no exception to the warrant requirement applies here and that, therefore, the warrantless search of the apartment was unjustified and improper." The findings and conclusions of the ALJ and the Commission are supported by the credible evidence in the record and are not arbitrary and capricious.

Finally, we reject Duardo's and Vazquez's argument that the ALJ did not consider their motion to dismiss. To the contrary, the ALJ addressed the motion and denied it in her initial decision.

### III.

We turn next to the issues raised by Gutierrez in his appeal from the Commission's decision to remove him from employment. First, he asserts the ALJ and Commission erred in substantiating the charges against him. Because we have addressed this issue at length above, we need not repeat ourselves here. For the reasons we have already stated, the ALJ's and Commission's factual findings were supported by the credible evidence in the record. Gutierrez unlawfully entered and searched Apt. A without a warrant and prepared and filed a false and misleading police report.

Gutierrez also challenges the imposed penalty of removal, asserting the Commission should have applied progressive discipline. We are not persuaded.

As our Supreme Court has stated, "[p]rogressive discipline [can be] bypassed when an employee engages in severe misconduct, especially when the employee's position involves public safety and the misconduct causes risk of harm to persons or property." Herrmann, 192 N.J. at 33.

In considering the appropriate penalty for Gutierrez, the Commission noted the "extremely serious offenses" sustained against the officer and that his actions eroded the public trust in the law enforcement community. Therefore, the Commission determined not to apply progressive discipline, instead finding Gutierrez's actions were severe enough to warrant his removal from the police department.

Again, in deference to the Commission's expertise and knowledge regarding the imposition of a disciplinary sanction, we see no reason to disturb its decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4034-18